IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JONI O'CONNELL | ) | CASE NO. |
| 304 North Main Street | ) | |
| Bradner, Ohio 43406 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| NATIONAL BEEF OHIO, LLC | ) | |
| 2208 Grant Road | ) | **JURY DEMAND ENDORSED** |
| North Baltimore, Ohio 45872 | ) | **HEREIN** |
| | ) | |
| **Serve also:** | ) | |
| National Beef Ohio, LLC | ) | |
| c/o CT Corporation System | ) | |
| 4400 Easton Commons, Suite 125 | ) | |
| Columbus, Ohio 43219 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Joni O'Connell, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## **PARTIES**

1. O'Connell is a resident of the city of Bradner, county of Wood, state of Ohio.

2. National Beef Ohio, LLC ("National Beef") is a foreign limited liability company that operated a business located at 2208 Grant Road, North Baltimore, Ohio 45872.

3. National Beef was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. 126 § 12101 *et seq.*

4. National Beef was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq.*

**JURISDICTION & VENUE**

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that O'Connell is alleging a Federal Law Claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 126 § 12101 *et seq.*

6. All material events alleged in this Complaint occurred in Wood County.

7. This Court has supplemental jurisdiction over O'Connell's state law claims pursuant to 28 U.S.C. § 1367 as O'Connell's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, O'Connell filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 471-2020-03644 against National Beef.

10. On May 12, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to O'Connell regarding the Charges of Discrimination brought by O'Connell against National Beef in EEOC Agency Charge No. 471-2020-03644.

11. O'Connell received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

12. O'Connell has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. O'Connell has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

**FACTS**

14. O'Connell is a former employee of National Beef.

15. O'Connell began working for National Beef in or around May 2005.

16. National Beef employed O'Connell as a general utility worker.

17. O'Connell had a strong history of performance with National Beef.

18. O'Connell consistently received pay raises.

19. O'Connell did not have any history of meaningful discipline.

20. O'Connell suffers from Post Traumatic Stress Disorder ("PTSD") and asthma.

21. O'Connell's PTSD and asthma substantially impaired one or more of her major life functions, including breathing.

22. O'Connell's PTSD and asthma substantially impaired one or more or her major life functions, including working.

23. As a result of suffering from PTSD and asthma, O'Connell is disabled.

24. Alternatively, National Beef perceived O'Connell to be disabled.

25. Despite any real or perceived disability, O'Connell was capable of performing her essential job functions with or without reasonable accommodation(s).

26. National Beef employed O'Connell during the COVID-19 pandemic.

27. During the COVID-19 pandemic, National Beef implemented a mandatory mask policy.

28. Due to her disability, O'Connell could not wear a mask covering her nose and mouth.

29. O'Connell requested an exemption from National Beef's mask policy due to her disability.

30. O'Connell's physician provided written orders explaining O'Connell's disability and requested that O'Connell wear a face shield while working because she was unable to wear a mask over her nose and mouth.

31. On or around July 20, 2020, O'Connell provided the written orders from her physician to Stacy Stuller.

32. National Beef employed Stuller as the head of human resources.

33. During all material events asserted herein, Stuller has and/or had authority to hire, fire, and/or discipline employees.

34. Stuller did not participate in the decision to hire O'Connell.

35. In response to O'Connell's accommodation request, Stuller instructed O'Connell that she could wear a half-face shield with a mask underneath.

36. O'Connell told Stuller that the half-face shield with a mask underneath would not work because she could not wear a mask over her nose or mouth due to her disabilities.

37. Stuller told O'Connell that she could not report to work with only a full-face shield.

38. National Beef failed to provide O'Connell with a reasonable accommodation.

39. In response to her accommodation request, Stuller placed O'Connell on an unpaid personal leave.

40. Stuller did not place non-disabled employees on unpaid personal leave.

41. Stuller placed O'Connell on an unpaid personal leave in an effort to make O'Connell quit.

42. While on personal leave, O'Connell sent Stuller multiple options of face shields for her to wear in an effort to return to work.

43. Stuller denied all of the options of face shields for O'Connell to wear for work.

44. O'Connell's subsequent face shield options were requests for accommodations due to her disability.

45. Stuller denied all of O'Connell's accommodation requests in an effort to make O'Connell quit.

46. O'Connell complained to Stuller that she felt that the continued denials of her accommodation request were discriminatory.

47. Upon information and belief, National Beef has a policy requiring investigations following receipt of a complaint of discrimination.

48. An investigation should include interviewing the complainant.

49. An investigation should include interviewing the subject of the complaint.

50. An investigation should include interviewing the subject of the reported incident.

51. An investigation should include interviewing witnesses to the reported incident.

52. An investigation should include getting a written statement from the complainant.

53. An investigation should include getting a written statement from the subject of the complaint.

54. An investigation should include getting a written statement from the subject of the reported incident.

55. In response to O'Connell's complaint of discrimination, National Beef did not interview Stuller.

56. In response to O'Connell's complaint of discrimination, National Beef did not get a written statement from O'Connell.

57. In response to O'Connell's complaint of discrimination, National Beef did not get a written statement from Stuller.

58. In response to O'Connell's complaint of discrimination, National Beef did not take corrective action against Stuller.

59. Similarly, it is well settled that an employer's failure to investigate, or take prompt remedial action against discrimination, thus allowing the discrimination to continue, is also an adverse employment action. *Ellis v. Jungle Jim's Mkt., Inc.*, 12th Dist. No. CA2014-12-254, 2015-Ohio-4226, 44 N.E.3d 1034, ¶ 39.

60. National Beef ratified Stuller's discriminatory conduct in failing to conduct an investigation into O'Connell's discrimination complaint.

61. National Beef ratified Stuller's discriminatory conduct in failing to discipline Stuller following O'Connell's discrimination complaint.

62. On or around November 2, 2020, National Beef constructively discharged O'Connell's employment.

63. A reasonable person would have found O'Connell's working conditions to be so unusually adverse that a reasonable person would have felt compelled to resign.

64. National Beef intended to create working conditions that were so unusually adverse that it would force O'Connell to quit.

65. Stuller placing O'Connell on an unpaid personal leave for over three months was so intolerable that she caused O'Connell to quit.

66. National Beef constructively discharged O'Connell because of her disability.

67. Alternatively, National Beef constructively discharged O'Connell because of her perceived disability.

68. National Beef constructively discharged O'Connell because she complained about the disability discrimination she suffered.

**COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. 126 § 12101 *et seq.***

69. O'Connell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

70. O'Connell suffers from PTSD and asthma.

71. O'Connell's PTSD and asthma substantially impaired one or more of her major life functions, including breathing.

72. O'Connell's PTSD and asthma substantially impaired one or more or her major life functions, including working.

73. As a result of suffering from PTSD and asthma, O'Connell is disabled.

74. Alternatively, National Beef perceived O'Connell to be disabled.

75. Despite any real or perceived disability, O'Connell was capable of performing her essential job functions with or without reasonable accommodation(s).

76. O'Connell disclosed her disability to National Beef.

77. O'Connell requested reasonable accommodations in connection with her disability.

78. National Beef treated O'Connell differently than other similarly-situated employees based on her disabling condition.

79. Alternatively, National Beef treated O'Connell differently than other similarly-situated employees based on her perceived disabling condition.

80. On or about July 22, 2020, National Beef constructively discharged O'Connell's employment without just cause.

81. National Beef constructively discharged O'Connell's employment based her disability.

82. Alternatively, National Beef constructively discharged O'Connell's employment based her perceived disability.

83. National Beef violated 42 U.S.C. 126 § 12101 *et seq.* when it constructively discharged O'Connell based on her disability.

84. Alternatively, National Beef violated 42 U.S.C. 126 § 12101 *et seq.* when it constructively discharged O'Connell based on her perceived disability.

85. National Beef violated 42 U.S.C. 126 § 12101 *et seq.* by discriminating against O'Connell based on her disabling condition.

86. Alternatively, National Beef violated 42 U.S.C. 126 § 12101 *et seq.* by discriminating against O'Connell based on her perceived disabling condition.

87. O'Connell suffered emotional distress as a result of National Beef's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq.*

88. As a direct and proximate result of National Beef's conduct, O'Connell suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

89. O'Connell restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

90. O'Connell suffers from PTSD and asthma.

91. O'Connell's PTSD and asthma substantially impaired one or more of her major life functions, including breathing.

92. O'Connell's PTSD and asthma substantially impaired one or more or her major life functions, including working.

93. As a result of suffering from PTSD and asthma, O'Connell is disabled.

94. Alternatively, National Beef perceived O'Connell to be disabled.

95. Despite any real or perceived disability, O'Connell was capable of performing her essential job functions with or without reasonable accommodation(s).

96. O'Connell disclosed her disability to National Beef.

97. O'Connell requested reasonable accommodations in connection with her disability.

98. National Beef treated O'Connell differently than other similarly-situated employees based on her disabling condition.

99. Alternatively, National Beef treated O'Connell differently than other similarly-situated employees based on her perceived disabling condition.

100. On or about July 22, 2020, National Beef constructively discharged O'Connell's employment without just cause.

101. National Beef constructively discharged O'Connell's employment based her disability.

102. Alternatively, National Beef constructively discharged O'Connell's employment based her perceived disability.

103. National Beef violated R.C. § 4112.02 when it constructively discharged O'Connell based on her disability.

104. Alternatively, National Beef violated R.C. § 4112.02 when it constructively discharged O'Connell based on her perceived disability.

105. National Beef violated R.C. § 4112.02 by discriminating against O'Connell based on her disabling condition.

106. Alternatively, National Beef violated R.C. § 4112.02 by discriminating against O'Connell based on her perceived disabling condition.

107. O'Connell suffered emotional distress as a result of National Beef's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

108. As a direct and proximate result of National Beef s conduct, O'Connell suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT III: FAILURE TO ACCOMODATE UNDER 42 U.S.C. 126 § 12101 *et seq.***

109. O'Connell informed National Beef of her disabling condition.

110. O'Connell requested accommodations from National Beef to assist with her disabilities including wearing a full-face shield.

111. O'Connell's requested accommodations were reasonable.

112. There was an accommodation available that would have been effective and would have not posed an undue hardship to National Beef.

113. National Beef failed to provide an accommodation.

114. National Beef violated The Americans with Disabilities Act (ADA) 42 U.S.C. 126 § 12101 *et seq*.

115. As a direct and proximate result of National Beef's conduct, O'Connell suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT IV: FAILURE TO ACCOMODATE UNDER R.C. § 4112.01 *et seq.*

116. O'Connell informed National Beef of her disabling condition.

117. O'Connell requested accommodations from National Beef to assist with her disabilities including wearing a full-face shield.

118. O'Connell's requested accommodations were reasonable.

119. There was an accommodation available that would have been effective and would have not posed an undue hardship to National Beef.

120. National Beef failed to provide an accommodation.

121. National Beef violated R.C. § 4112.02 by failing to provide O'Connell a reasonable accommodation.

122. O'Connell suffered emotional distress as a result of National Beef's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

123. As a direct and proximate result of National Beef's conduct, O'Connell suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT V: RETALIATION IN VIOLATION OF 42 U.S.C. 126 § 12101** *et seq.*

124. O'Connell restates each and every prior paragraph of this complaint, as if it were fully restated herein.

125. As a result of the Stuller's discriminatory conduct described above, O'Connell complained about the disability discrimination she was experiencing.

126. Subsequent to O'Connell reporting of disability discrimination, National Beef continued to deny O'Connell with a reasonable accommodation.

127. Subsequent to O'Connell reporting of disability discrimination, National Beef continued O'Connell's unpaid personal leave.

128. Subsequent to O'Connell reporting of disability discrimination, National Beef constructively discharged O'Connell's employment.

129. National Beef's actions were retaliatory in nature based on O'Connell 's opposition to the unlawful discriminatory conduct.

130. O'Connell suffered emotional distress as a result of National Beef's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. § 12101 *et seq*.

131. As a direct and proximate result of National Beef's retaliatory discrimination against and constructive discharge of O'Connell, she suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT VI: RETALIATION IN VIOLATION OF R.C. § 4112.01** *et seq.*

132. O'Connell restates each and every prior paragraph of this complaint, as if it were fully restated herein.

133. As a result of the Stuller's discriminatory conduct described above, O'Connell complained about the disability discrimination she was experiencing.

134. Subsequent to O'Connell reporting of disability discrimination, National Beef continued to deny O'Connell with a reasonable accommodation.

135. Subsequent to O'Connell reporting of disability discrimination, National Beef continued O'Connell's unpaid personal leave.

136. Subsequent to O'Connell reporting of disability discrimination, National Beef constructively discharged O'Connell's employment.

137. National Beef's actions were retaliatory in nature based on O'Connell 's opposition to the unlawful discriminatory conduct.

138. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

139. O'Connell suffered emotional distress as a result of National Beef's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

140. As a direct and proximate result of National Beef's retaliatory discrimination against and constructive discharge of O'Connell, she suffered and will continue to suffer damages, including economic and emotional distress damages.

## DEMAND FOR RELIEF

WHEREFORE, O'Connell demands from Defendant the following:

(a) Issue an order requiring Defendant to restore O'Connell to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate O'Connell for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for O'Connell's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

                                               Respectfully submitted,

                                       */s/ Taurean J. Shattuck*
                                       Fred M. Bean (0086756)
                                       Taurean J. Shattuck (0097364)
                                       David Byrnes (0086975)
                                       **THE SPITZ LAW FIRM, LLC**
                                       25200 Chagrin Boulevard, Suite 200
                                       Beachwood, OH 44122
                                       Phone: (216) 291-4744
                                       Fax:   (216) 291-5744
                                       Email:  Fred.Bean@spitzlawfirm.com
                                                    Taurean.Shattuck@spitzlawfirm.com
                                                    David.Byrnes@spitzlawfirm.com

                                       *Attorneys For Plaintiff*

## **JURY DEMAND**

Plaintiff Joni O'Connell demands a trial by jury by the maximum number of jurors permitted.

                                         */s/ Taurean J. Shattuck*
                                         Fred M. Bean (0086756)
                                         Taurean J. Shattuck (0097364)
                                         David Byrnes (0086975)